**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**RONNIE THORNTON,**

      **Plaintiff,**

**vs.**                          **Case No. 4:11cv401-RS/CAS**

**E. HERCULE,
Chief Health Officer,**

      **Defendant.**

_____/


## REPORT AND RECOMMENDATION

Defendant Hercule filed a motion for summary judgment, doc. 47, supported by several exhibits. Defendant then supplemented the motion by filing an additional exhibit in support of summary judgment. Doc. 49. Plaintiff, a pro se prisoner, was advised of his obligation to respond to the summary judgment motion, doc. 50, and Plaintiff has filed a response in opposition to the motion.

**Allegations of the complaint, doc. 1**

Plaintiff alleged that on June 2, 2011, while housed at Liberty Correctional Institution, he went to the medical department for a callout "to conduct a colon exam." *Id.* at 5-6. While Plaintiff was with Dr. Hercule, Plaintiff asked if he would look at his

great toe because Plaintiff thought he had a fungus. *Id.* at 6. After initially refusing to examine Plaintiff's toe, Dr. Hercule agreed to examine his toe and further agreed Plaintiff had a fungus. *Id.* Plaintiff alleged that Dr. Hercule said that since Plaintiff was "complaining so much, he [would] treat" his tow. *Id.* Plaintiff reports that Dr. Hercule "got some scissor-type object and put the Plaintiff' right foot in an arched position, and begins cutting the Plaintiff's right great toe nail away." *Id.* Plaintiff alleged that he was moaning and told Dr. Hercule he was "going too deep" but Dr. Hercule "continued to push and cut on the Plaintiff's toe and Plaintiff begin to scream loudly for Defendant to 'Stop! Stop! Stop!' " *Id.* at 7. Plaintiff claimed his toe was bleeding greatly, he was in "excruciating pain" and was left "with a deep hole" in the toe. *Id.* When Dr. Hercule saw the toe, he admitted he "went too deep." *Id.* Plaintiff asked for pain medication but Dr. Hercule told Plaintiff that he would be alright. *Id.* Plaintiff again asked for something for the pain, and Dr. Hercule "said no, and told Plaintiff to leave, without providing him any pain [medications], antibiotics, ointments, bandages, or anything." *Id.* at 7-8.

Plaintiff asserts two causes of action: (1) an Eighth Amendment claim and (2) a state law claim under Fla. Stat. § 768.28(a)(1)(9). Doc. 1 at 8-9. Plaintiff seeks compensatory and punitive damages. *Id.* at 9.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment, the Defendant initially has the burden to demonstrate an absence of evidence to support the nonmoving party's case. <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If they do so, the burden shifts to Plaintiff to come forward with evidentiary

material demonstrating a genuine issue of material fact for trial.  *Id*.  An issue of fact is "material" if it could affect the outcome of the case.  <u>Hickson Corp. v. Northern Crossarm Co., Inc.</u>, 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, <u>Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  <u>Hickson Corp.</u>, 357 F.3d at 1260, *quoting* <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party, <u>Watkins v. Ford Motor Co.</u>, 190 F.3d 1213, 1216 (11th Cir. 1999), if there is a genuine dispute as to those facts.  <u>Scott v. Harris</u>, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), *cited in* <u>Ricci v. DeStefano</u>, 129 S.Ct. 2658, 2677 (2009).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  <u>Matsushita Elec. Industrial Co.</u>, 475 U.S. at 587 (internal quotation marks omitted), *quoted in* <u>Ricci v. DeStefano</u>, 129 S.Ct. at 2677.

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  <u>Owen v. Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The

nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  <u>Owen v. Wille</u>, 117 F.3d at 1236; <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553.

**The relevant Rule 56(e) evidence**

Plaintiff filed an affidavit in opposition to Defendant's summary judgment motion. Doc. 53.  The affidavit essentially parallels the factual assertions presented in the complaint.  Plaintiff avers that after Dr. Hercule consented to look at Plaintiff's toe due to Plaintiff's complaints about a fungus, he began trimming his toenail and ignored Plaintiff's warning that "he was going too deep pass [sic] the nail."  *Id.*  Plaintiff said Dr. Hercule ignored him and "continued to push until he cut a deep chunk of meat out of the corner" of Plaintiff's toe, without any medication.  *Id.*  Plaintiff said he was screaming for Dr. Hercule to stop and reported being in "severe pain" but Dr. Hercule refused to give him pain medication and told Plaintiff he would be alright.  *Id.* at 2. Plaintiff said he left limping, in severe pain, with a "blood stained sock."  *Id.* at 2-3.

Defendant, however, has a different version of events.  Doc. 47.  Defendant states that on April 28, 2011, Plaintiff was examined by a nurse who noted that Plaintiff had "yellow, thickened toenails."  Ex. A at ¶3, Ex. B at 1.[1]  Plaintiff was given "antifungal medication and powder for his feet" and given additional instructions for care and prevention.  *Id.*  On May 9, 2011, Plaintiff was seen in the Doctor's Clinic, in part for the fungal infection on his feet.  *Id.;* Ex. B at 3-4.  Plaintiff was directed to apply Lotramin

---

[1] All references to exhibits are to those attached to the motion for summary judgment, doc. 47.

cream twice a day for two months, and he was also provided "Diflucan, an oral medication used to treat fungal infections." *Id.*

On June 1, 2011, Plaintiff was examined by Dr. Hercule in the Chronic Illness Clinic due to chronic asthma and hypertension.[2] E. A; Ex. B at 4-6. Dr. Hercule noted Plaintiff's toenail fungus and athlete's foot. *Id.* Dr. Hercule stated that while he did trim Plaintiff's toenails, "any allegation that I took a 'chunk of meat' out of his foot is simply untrue." *Id.* Dr. Hercule asserts that Plaintiff's toe "was not bleeding at any point in this examination." Ex. A at ¶ 5. "If that had occurred, I would have documented it in the medical record." *Id.* Dr. Hercule states that anitfungal medications were not prescribed during this examination because Plaintiff "had already been provided topical and oral antifungal medication[s] at previous appointments." Ex. A at ¶ 5. Furthermore, Dr. Hercule asserts that "prescription pain medication was [not] initially warranted based was no medical need to provide [Plaintiff] with any prescription pain medication based on his medical conditions at this time." *Id.* at ¶ 8. Had Plaintiff needed over-the-counter pain medications such as Tylenol and Motrin, they are available to him in the dorm. *Id.*

Plaintiff did not return to the Medical Department for two weeks, and on June 14, 2011, Plaintiff went to sick call and was seen by Nurse Register. Ex. A at ¶ 6; Ex. B at 7. Plaintiff complained of pain in his right big toe, and the nurse noted that the doctor trimmed at last clinic. *Id.* Plaintiff reported pain at a level of 6 on a 1-10 scale and said he had been taking Tylenol from the dorm. Ex. B at 7. The nurse noted there was "nail discoloration," "cracked nail," and "irregular looking nail," and it was tender to the touch,

---

[2] Plaintiff's affidavit asserted that his medical callout was "for colon reasons," doc. 53 at 2, not for respiratory or cardiovascular reasons as indicated in the medical records. Doc. 47-2 (Ex. B at 6).

but with no redness or inflammation present. *Id.* Plaintiff was given cotton, an antifungal medication, and instructions about care and hygiene, but the record indicates no other treatment was needed and there was no need for a follow-up visit. *Id.*

Plaintiff filed an informal grievance complaining of pain which was responded to on or about June 15th. Ex. B at 8. Senior Health Service Administrator Diane Smith advised Plaintiff to use sick call if he needed treatment. *Id.* On or about June 22, 2011, Plaintiff submitted a formal grievance complaining of inadequate treatment, pain from his "toe up to right inner thigh," and requesting pain medication. Ex. B at 8. Diane Smith again directed Plaintiff to use sick call process if he was in need of urgent care, but advised Plaintiff that he was scheduled to see the physician "this week for follow-up." *Id.*

On June 30, 2011, Plaintiff was seen again by Dr. Hercule in the Doctor's Clinic for a follow up examination of his athlete's foot. Ex. A at ¶ 7, Ex. B at 9. Plaintiff said it was still bad and he also complained of pain in his right leg. *Id.* Dr. Hercule noted that Plaintiff's toenails had not improved, and issued Plaintiff antifungal cream and analgesic balm ointment. *Id.* No other treatment or medications were required. *Id.* Plaintiff did not return to medical with further complaints on this issue prior to filing his complaint on August 16, 2011. Doc. 47 at 4.

Plaintiff filed another informal grievance complaining that he was still in much pain and needed pain medication. Ex. B at 10; *see also* doc. 1 at 21. On or about July 13, 2011, Diane Smith responded and once again directed Plaintiff to use the sick call process if he was in need of medical treatment. *Id.*

Dr. Hercule has also submitted an affidavit of Susan Torbert who advises that the Department of Corrections "maintains records of Notices of Intent filed under § 768.28, Florida Statutes." Ex. C (doc. 49-1). Torbert states that after review of those records, there is no notice filed by Plaintiff. *Id.*

**Analysis**

Deliberate indifference to the serious medical needs of sentenced prisoners violates the Eighth Amendment's prohibition of cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The concept of deliberate indifference entails something more than negligence, but is satisfied by something less than actions undertaken with an intent to cause harm. Farmer v. Brennan, 114 S. Ct. 1970, 1978 (1994). Subjective recklessness, as defined in criminal law, is the standard which must be shown for an official's actions to rise to the level of deliberate indifference. *Id.* Deliberate indifference has been described as a culpable state of mind of the defendant to unnecessarily and wantonly inflict pain or harm to a prisoner by depriving him of a basic human need. Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).

Combining the standards from Farmer and Estelle, the Eleventh Circuit has clarified that, ultimately, there are four requirements to bringing an Eighth Amendment claim for the denial of medical care: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000), *cert. denied* 531 U.S. 1077 (2001); Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). Put another way, once a prisoner shows that he has a

serious medical need, "the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004), *citing* McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir.1999).

A "'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. Dekalb Regional Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), *quoting* Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D. N.H. 1977). Alternatively, "a serious medical need is determined by whether a delay in treating the need worsens the condition" or "if left unattended, poses a substantial risk of serious harm." Mann v. Taser Intern., Inc., 588 F.3d 1291, 1307 (11th Cir. 2009), *citing* Hill, 40 F.3d at 1188-89, and Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).

Defendant argues that Plaintiff's athlete's foot and toenail fungus are not serious medical needs. Doc. 47 at 8-9. In support of that argument, Defendant cites to several cases which lend credence to that assertion. These conditions do not implicate a serious medical need. *See* Gates v. Bogan, No. 2:10cv77, 2012 WL 3776889 (E.D. Ark. Aug. 30, 2012) (granting qualified immunity to prison officials who did not give desired boots to inmate with athlete's foot and citing to several unpublished opinions which found that athlete's foot is "not usually a serious medical need), *citing* Vasquez v. Baca, No. 07-55641, 323 F.App'x 503, 504, 2009 WL 965808, *1 (9th Cir. 2009) (affirming summary judgment "because [detainee's] allegations concerning treatment of

a cold, a migraine and athlete's foot did not implicate a serious medical need");

Tsakonas v. Cicci, 308 F.App'x 628, 2009 WL 500567 (3d Cir. 2009)(holding that

Tsakonas's medical problems consisting of "weight loss, eczema of the feet, seborrhea

of the scalp, athlete's foot, constipation, and swollen knuckles on his right hand" were

not serious medical needs). The Third Circuit advised that to be a serious medical

need, the "condition must be such that a failure to treat can be expected to lead to

substantial and unnecessary suffering, injury, or death." Because Tsakonas's

conditions were "not life-threatening conditions," the district court properly concluded

Tsakonas failed to present an Eighth Amendment claim. Similarly, cases from the

Seventh Circuit agree that athlete's foot is not an infection which rises to a serious

medical need. Stanley v. Page, 44 F.App'x 13, 2002 WL 1940159 (7th Cir. 2002), *citing*

Snipes v. DeTella, 95 F.3d 586, 591 (7th Cir. 1996), *cert. denied*, 117 S.Ct. 980 (1997).

In Snipes, the court held that a "doctor's decision not to administer a local anesthetic

before removing" a prisoner's toenail did not constitute an Eighth Amendment violation.

Snipes v. DeTella, 95 F.3d 586, 591 (7th Cir. 1996), *certiorari denied*, 117 S.Ct. 980

(1997). Notably, there was no dispute in that case between the inmate and doctor that

removing the toenail was the correct course of action, and the plaintiff's challenge was

deemed to be "disagreement with the course of" his treatment and the doctor's

"decision to treat a medical need in a particular manner." 95 F.3d 586.

    In this case, Plaintiff was treated for athlete's foot and a toe fungus. Accepting

Plaintiff's version of facts as true, in the course of trimming Plaintiff's nails, Dr. Hercule

cut too deep. Defendant contends that "even assuming Dr. Hercule did cut [Plaintiff's]

infected nail too close while trimming the toenails, causing pain and bleeding, such a claim would be better suited to negligence rather than a § 1983 action." *Id.* at 11.

A "serious medical need" is one that has either "been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill, 40 F.3d at 1187. "In either of these situations, the medical need must be 'one that, if left unattended, 'pos[es] a substantial risk of serious harm.' " Taylor, 221 F.3d at 1258, *quoted in* Farrow, 320 F.3d at 1243. Not every medical need is a serious one and not "[e]very claim by a prisoner that he did not receive medical treatment" amounts to a violation of the Eighth Amendment." Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011), *citing* Estelle, at 105, 97 S.Ct. at 291. There is no evidence that failing to treat a toe fungus would cause a substantial risk of serious harm, or would be expected to lead to "substantial and unnecessary suffering, injury, or death." Plaintiff undoubtedly had pain, but the evidence does not reveal it was substantial or of extended duration. Plaintiff went to sick call only once for pain, and that was two weeks after the incident in question. Despite Plaintiff's grievances, he never returned to sick call as he was instructed to do and the evidence reveals that Plaintiff was able to sufficiently treat his pain with Tylenol from the dormitory. Medical problems of a toe fungus and athlete's foot are minor inconveniences and cause minimal problems. Considering all the evidence, Plaintiff's claim does not rise to the level of an Eighth Amendment claim and Defendant's motion for summary judgment should be granted.

As for Plaintiff's state law claim, this claim should not be addressed on the merits. Because there has been no violation of federal constitutional rights, which was

the only jurisdictional basis for this case proceeding in federal court, the Court should decline to exercise its supplemental jurisdiction over the remaining state law claim for negligence.  Such a decision is entirely within the Court's discretion as specified in 28 U.S.C. § 1367(c)(3).  *See, e.g.*, Cook *ex rel.* Estate of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1123 (11th Cir. 2005) (noting that when "no basis for original federal jurisdiction presently exists, the district court has the discretion to decline to exercise supplemental jurisdiction."); Lucero v. Trosch, 121 F.3d 591 (11th Cir. 1997); Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559 (11th Cir. 1994).  "When the district court has dismissed all federal claims from a case, there is a strong argument for declining to exercise supplemental jurisdiction over the remaining state law claims." No Straw, LLC v. Stout Street Funding, LLC, No. 2:12cv182, 2013 WL 2951064, *6 (N.D. Ga. June 14, 2013), *citing* Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, 108 S.Ct. 614, 619 n.7, 98 L.Ed.2d 720 (1988).

Here, Plaintiff seeks to bring a state law claim for "[t]he 'wanton and willful disregard' of Defendant Hercule, as herein described, resulted in the Plaintiff suffering personal injuries and extensive pain in violation of Florida Statutes 768.28(a)(1)(9) . . . ."  Doc. 1 at 9.  Plaintiff obviously intends to bring a state law claim, but the provision cited by Plaintiff does not exist.  Presumably Plaintiff means § 768.28(9)(a) because the complaint quotes language from the statute.[3]  Defendant contends that Plaintiff has not

---

[3] The statute provides, in relevant part: "No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." FLA. STAT. § 768.28(9)(a).  Furthermore, "[h]ealth care providers or vendors, or any of

complied with "the detailed and specific presuit requirements" specified in Chapter 766 and § 768.28 and, thus, dismissal is warranted.  Doc. 47 at 14-15.  Such state law provisions should be left to ruling by the state courts of Florida should Plaintiff desire to pursue that claim.  Because no federal claim remains, summary judgment should be granted and the supplemental state law claim dismissed without prejudice.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion for summary judgment, doc. 47, be **GRANTED** as to Plaintiff's § 1983 claim, and that the Court decline to exercise supplemental jurisdiction over the remaining state law claim against Defendant Hercule.

**IN CHAMBERS** at Tallahassee, Florida, on July 2, 2013.


 S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

---

their employees or agents, that have contractually agreed to act as agents of the Department of Corrections to provide health care services to inmates of the state correctional system shall be considered agents of the State of Florida, Department of Corrections, for the purposes of this section, while acting within the scope of and pursuant to guidelines established in said contract or by rule."  FED. R. CIV. P. (10)(a).